# EXHIBIT A

FILED IN MY OFFICE
DISTRICT COURT CLERK
10/5/2017 1:54:04 PM
STEPHEN T. PACHECO
Ginger Sloan

| SUMMONS | |
|---|---|
| District Court: FIRST JUDICIAL<br>Santa Fe County, New Mexico<br>Court Address:<br>225 Montezuma Ave.<br>Santa Fe, New Mexico 87501<br>Court Telephone No.: 505-455-8250 | Case Number: No. D-101-CV-2017-02435<br><br>Assigned Judge:     Hon. Raymond Z. Ortiz |
| CHUBB UNDERWRITING AGENCIES LIMITED FOR AND ON BEHALF OF SYNDICATE 2488; ALLIANZ GLOBAL RISKS US INSURANCE COMPANY; AND XL SPECIALTY INSURANCE COMPANY,<br>          Plaintiffs,<br>v.<br>THE INSURERS SUBSCRIBING TO AVIATION COMMERCIAL GENERAL LIABILITY POLICY NO. PL 003391673-13, BEING: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; COMMERCE AND INDUSTRY INSURANCE COMPANY; AND AIG AEROSPACE INSURANCE SERVICES, INC.,<br>          Defendants. | Defendant:<br>Name: AIG Aerospace Insurance Services, Inc.<br><br>Address: c/o CSC |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1.      A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2.      You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at    Santa Fe            , New Mexico, this 6th  day of October, 2017.

STEPHEN T. PACHECO
CLERK OF DISTRICT COURT

By: _____
          Deputy

SOMMER, UDALL, HARDWICK & JONES, P.A.

  /s/ Eric Sommer
Eric Sommer
P.O. Box 1984
Santa Fe, New Mexico  87504-1984
Phone: (505) 982-4676 / Fax: (505) 988-7029
Email Address:        ems@SommerUdall.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

2

## RETURN[1]

STATE OF NEW MEXICO )
                    )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the ___ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

*(check one box and fill in appropriate blanks)*

[  ] to the defendant _____ *(used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)*

[  ] to the defendant by [mail] [courier service] as provided by <u>Rule 1-004 NMRA</u> *(used when service is by mail or commercial courier service).*

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[  ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, *(used when the defendant is not presently at place of abode)* and by mailing by first class mail to the defendant at _____ *(insert defendant's last known mailing address)* a copy of the summons and complaint.

[  ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ *(insert defendant's business address)* and by mailing the summons and complaint by first class mail to the defendant at _____ *(insert defendant's last known mailing address).*

[  ] to _____, an agent authorized to receive service of process for defendant _____.

[  ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ *(used when defendant is a minor or an incompetent person).*

[  ] to _____ *(name of person)*, _____, *(title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).*

Fees: _____

_____
Signature of person making service

_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____[2]

_____
Judge, notary or other officer
authorized to administer oaths

_____
Official title

## USE NOTE

### Credits

[Adopted effective Aug. 1, 1988. Amended effective March 1, 2005; Aug. 1, 2007; Jan. 7, 2013; Dec. 31, 2013; Dec. 31, 2014.]

Footnotes

[1]    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

[2]    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

NMRA, Form 4-206, NM R CIV Form 4-206
State court rules are current with amendments received through December 1, 2015.

FILED IN MY OFFICE
DISTRICT COURT CLERK
8/25/2017 2:35:35 PM
STEPHEN T. PACHECO
Jill Nohl

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

CHUBB UNDERWRITING AGENCIES )
LIMITED FOR AND ON BEHALF OF )
SYNDICATE 2488; ALLIANZ )
GLOBAL RISKS US )
INSURANCE COMPANY; )
AND XL SPECIALTY INSURANCE )
COMPANY, )
 )
 )
 *Plaintiffs* )        **Cause No.:** D-101-CV-2017-02435
 )
v. )
 )
THE INSURERS SUBSCRIBING TO )
AVIATION COMMERCIAL )
GENERAL LIABILITY POLICY )
NO. PL 003391673-13, BEING: )
NATIONAL UNION FIRE )
INSURANCE COMPANY OF )
PITTSBURGH, PA; COMMERCE )
AND INDUSTRY INSURANCE )
COMPANY; AND AIG )
AEROSPACE INSURANCE )
SERVICES, INC., )
 )
 *Defendants* )

## COMPLAINT FOR DAMAGES AND FOR DECLARATORY JUDGMENT OR ALTERNATIVELY PETITION TO COMPEL ARBITRATION

Plaintiffs Chubb Underwriting Agencies Limited for and on behalf of Syndicate 2488,

Allianz Global Risks US Insurance Company, and XL Specialty Insurance Company (together

"Plaintiffs"), by and through their undersigned counsel, file this Complaint For Damages And For

Declaratory Judgment Or Alternatively Petition To Compel Arbitration ("Complaint") against the

insurers subscribing to an insurance policy known as Aviation Commercial General Liability Policy

No. PL 003391673-13, being: National Union Fire Insurance Company of Pittsburgh, PA,

Commerce and Industry Insurance Company, and AIG Aerospace Insurance Services, Inc., (together "Defendants") and in support thereof would respectfully show the following:

## NATURE OF THE CASE

1.      This Complaint arises from the refusal of Defendants to honor the terms of an agreement made with Plaintiffs to arbitrate the apportionment of liability between their respective insurance policies for money paid to settle certain claims arising out of an aircraft accident.

2.      Plaintiffs are insurers subscribing to an insurance policy known as Aviation Fueling, Defueling and Products Liability Policy No. AM1435751 (the "Chubb Policy").

3.      Defendants are insurers subscribing to an insurance policy known as Aviation Commercial General Liability Policy No. PL 003391673-13 (the "National Union Policy"),

4.      On August 27, 2014, a Cessna 421C, multi-engine airplane, N51RX, crashed shortly after takeoff from Las Cruces International Airport in Southern New Mexico, killing the four individuals aboard (the "Accident").

5.      The estates of the four individuals who were on board the aircraft (collectively the "Estates"), along with the aircraft owner, Elite Medical Air Transport LLC (hereinafter "Elite"), filed suits/interventions against numerous defendants.

6.      The various lawsuits were consolidated into a single case *In re: Air Crash of N51RX*, Cause Number D-101-CV-2015-00023 in the First Judicial District Court, County of Santa Fe, State of New Mexico (the "Litigation").

7.      Included as defendants in the Litigation were Phillips 66, Southwest Aviation, Inc., and Ascent Aviation Group, Inc. (collectively the "Fueler Group").

8.      Each member of the Fueler Group sought coverage under the Chubb Policy and/or the National Union Policy for the claims asserted against it in the Litigation.

2

9.      During the course of the Litigation, the Plaintiffs, Defendants, and the parties to the Litigation participated in mediation in Santa Fe, New Mexico, which resulted in the settlement of the claims of three of the Estates (the "Summers, Chavez, and Martinez claims") and the claims asserted by Elite (collectively "the Settlements"). The claims of the fourth Estate also were settled, but that settlement was not covered by the parties' arbitration agreement and is not involved in this litigation.

10.     At the time the mediation sessions were conducted, and the Settlements were reached, unresolved issues existed as to the insurance coverage available to the members of the Fueler Group under the Chubb Policy and/or the National Union Policy, as well as the allocation of liability to each member of the Fueler Group with respect to the cause of the Accident.

11.     In order to achieve the Settlements and avoid a jury trial of the issues of liability and damages arising out of the Accident, the Plaintiffs and the Defendants agreed, through their respective representatives, and before the Settlements were reached, to jointly fund the amounts required to pay the Settlements, subject to subsequent binding arbitration between them to resolve the issues with respect to the insurance coverage available under the policies, and the allocation of liability for the Accident among the members of the Fueler Group (the "Agreement").

12.     On December 7, 2015, coverage counsel for the Defendants sent an email to coverage counsel for the Plaintiffs setting forth the material terms of the parties' Agreement. A true and correct copy of that email is attached hereto as Exhibit "A."

3

13.     Pursuant to, and in reliance on, the terms of the Agreement, the Plaintiffs and Defendants completed the Settlements. Pursuant to the funding portion of the Agreement, Plaintiffs, on a without prejudice basis, funded the majority of the money required to complete the Settlements.[1]

14.     In February 2017, counsel for Plaintiffs contacted counsel for Defendants to initiate the arbitration required to allocate liability amongst the members of the Fueler Group pursuant to the Agreement.

15.     On April 24, 2017, Plaintiffs provided a draft arbitration agreement to Defendants based on the terms of the parties' Agreement as set forth in the December 7, 2015 email.

16.     That same day, counsel for Defendants provided a separate draft arbitration agreement in which Defendants sought to impose a new condition limiting their overall liability to be assessed in the binding arbitration process to the maximum sum of 20% (twenty percent) of the total amounts paid in the Settlements (the "Liability Cap").

17.     This Liability Cap was not previously agreed, or even discussed, by the parties, and was not part of the Agreement.

18.     When Plaintiffs objected to the inclusion of this new term in the Agreement, Defendants advised Plaintiffs that they would not participate in the agreed arbitration without the Liability Cap. A true and correct copy of the email from Defendants' counsel dated May 5, 2017, advising of Defendants' refusal to participate in the arbitration, is attached hereto as Exhibit "B."

19.     Plaintiffs allege that the Defendants have breached the Agreement by refusing to participate in the agreed arbitration unless Plaintiffs agree to the Liability Cap, which was not part of the parties' Agreement.

---

[1] The terms of the group settlement are confidential and for that reason, the amounts paid by Plaintiffs and Defendants cannot be publically disclosed.

4

20.     As Defendants have breached the Agreement, Plaintiffs sue under the theories of promissory estoppel, breach of contract, and breach of the duty of good faith and fair dealing for reliance damages because Plaintiffs paid the majority of the money needed to fund the Settlements based on the Defendants' promise of later arbitrating the coverage issues and the allocation of liability under the terms of the Agreement, without any limitation on the amount of Defendants' potential liability.

21.     In the alternative, Plaintiffs sue to compel arbitration according to the terms of the Agreement, which do not include the Liability Cap or any other limit on Defendants' potential liability.

PARTIES

22.     Chubb Underwriting Agencies Limited for and on behalf of Syndicate 2488, is the lead insurer subscribing to the Chubb Policy. It is incorporated under the laws of England and Wales with its principal place of business in London, England.

23.     Allianz Global Risks US Insurance Company is a subscribing insurer to the CHUBB policy. It is incorporated under the laws of the State of Illinois, with its principal place of business in the State of Illinois.

24.     XL Specialty Insurance Company is a subscribing insurer to the CHUBB policy. It is incorporated under the laws of the State of Delaware, with its principal place of business in the State of Connecticut.

25.     On information and belief, the insurers subscribing to the National Union Policy are as follows:

5

(a) National Union Fire Insurance Company of Pittsburgh, PA, a corporation incorporated under the laws of Pennsylvania, with its principal place of business located at 175 Water Street, 18th Floor, New York, NY 10038. National Union Fire Insurance Company of Pittsburgh, PA may be served with process at Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110;

(b) Commerce and Industry Insurance Company, a corporation that is incorporated under the laws of New York, with its principal place of business at 175 Water Street, 18th Floor, New York, NY 10038. Commerce and Industry Insurance Company may be served with process at CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Dr, Ste 150N, Sacramento, CA 95833; and

(c) AIG Aerospace Insurance Services, Inc., a corporation incorporated under the laws of Georgia, with its principal place of business located at 1200 Abernathy Road NE, Building 600, Atlanta, GA 30328. AIG Aerospace Insurance Services, Inc. may be served with process at Corporation Service Company, 40 Technology Parkway South, Suite 300, Gwinnett, Norcross, GA, 30092, USA.

26.     Commerce and Industry Insurance Company also is an insurer subscribing to the Chubb Policy, but has elected not to participate as a plaintiff in this action.

27.     This dispute poses no "federal question" that would require this case to be brought in United States District Court under 28 U.S. Code §1331. The FAA does not itself confer subject matter jurisdiction. *See, e.g., Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1054 (10th Cir. 2006). Moreover, none of the individual claims present in this matter are civil actions arising under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331.

**VENUE**

6

28.     Venue is proper in Santa Fe, Santa Fe County, New Mexico under § 38-3-1, NMSA 1978 (1988), because Santa Fe County is where the Agreement at issue in the present matter was made.

### COUNT I - CAUSE OF ACTION IN PROMISSORY ESTOPPEL FOR DIRECT REIMBURSEMENT

29.     Plaintiffs incorporate by reference the allegations set forth above, as if set forth fully herein.

30.     Plaintiffs assert a cause of action for promissory estoppel for the direct redistribution of the Settlement funds.

31.     Plaintiffs were induced to contribute the majority of the funds required to complete the Settlements by Defendants' promise to arbitrate the ultimate allocation of liability between the policies for the money paid to complete the Settlements in accordance with the terms of the Agreement.

32.     Plaintiffs reasonably relied on, and reasonably acted on, Defendants' promise by providing the majority of the funds required to pay the Settlements.

33.     Defendants knew or had reason to know that Plaintiffs were funding the Settlements based on Defendants' promise of the opportunity to recoup at least a portion of these funds through binding arbitration pursuant to the Agreement. *See* Exhibit A.

34.     Defendants did not honor their agreement to arbitrate in accordance with the terms of the Agreement, and have instead refused to arbitrate unless Plaintiffs agree to the Liability Cap.

35.     Plaintiffs would not have entered into the Settlements, nor would Plaintiffs have funded the majority of the money needed to pay the Settlements, had they known that any future arbitration would be subject to the Liability Cap that the Defendants now seek to add to the Agreement.

7

36.    Therefore it is unjust for Plaintiffs to be denied the opportunity to recoup these funds through arbitration pursuant to the terms of the Agreement.

37.    Plaintiffs are entitled to an award of damages equal to the difference between what Plaintiffs actually contributed to fund the Settlements, and what Plaintiffs should have paid toward the Settlements based on their actual percentage of liability as would have been determined pursuant to the Agreement.

## COUNT II – BREACH OF CONTRACT

38.    Plaintiffs incorporate by reference the allegations set forth above, as if set forth fully herein.

39.    Defendants have breached the written agreement by unilaterally requiring that Plaintiffs agree to limit, at arbitration, Defendants' liability in accordance with the Liability Cap.

40.    As a proximate result of Defendants' breach, Plaintiffs have been damaged.

41.    Plaintiffs are entitled to an award of damages equal to the difference between what Plaintiffs actually contributed to fund the Settlements, and what Plaintiffs should have paid toward the Settlements based on their actual percentage of liability as would have been determined pursuant to the Agreement.

## COUNT III – BREACH OF GOOD FAITH AND FAIR DEALING

42.    Plaintiffs incorporate by reference the allegations set forth above, as if set forth fully herein.

43.    Defendants have acted in bad faith by refusing to arbitrate, without limitation, the allocation of liability between Plaintiffs and Defendants in accordance with the terms of the Agreement.

44.    Defendants have breached the duty of good faith and fair dealing.

45.    Plaintiffs are entitled to compensatory damages equal to the difference between what Plaintiffs actually contributed to fund the Settlements, and what Plaintiffs should have paid toward

8

the Settlements based on their actual percentage of liability as would have been determined pursuant to the Agreement.

COUNT IV – DECLARATORY JUDGMENT

46.     Plaintiffs incorporate by reference the allegations set forth above, as if set forth fully herein.

47.     Under the Agreement, Plaintiffs contend that Defendants agreed that the parties' liability for contribution to the Settlements would be based on their respective percentages of liability, to be determined through binding arbitration pursuant to the terms of the Agreement.

48.     Defendants now contend that their percentage of liability for the Settlements should be limited in accordance with the Liability Cap.

49.     Plaintiffs deny this contention.

50.     There exists a controversy between the parties.

51.     Pursuant to the New Mexico Declaratory Judgment Act, § 44-6-1, et. seq., Plaintiffs are entitled to a declaration that the adjudication and determination of the parties percentage of liability is not subject to the Liability Cap and that Defendants are equitably estopped from asserting any such limitation on their liability in the binding arbitration agreed to be conducted under the Agreement.

COUNT V- CAUSE OF ACTION TO COMPEL ARBITRATION BASED ON CONTRACT

(Federal Arbitration Act, 9 U.S.C. § 4)

52.     Plaintiffs incorporate by reference the allegations set forth above, as if set forth fully herein.

53.     In the alternative to seeking damages directly through promissory estoppel, as Defendants allege that there is "nothing further to discuss" and are refusing to arbitrate pursuant to the Agreement, Plaintiffs seek to compel arbitration under the Federal Arbitration Act ("FAA").

9

54.    The FAA mandates arbitration of claims that are subject to a written agreement and that affect interstate commerce.  Specifically, the FAA requires arbitration where (a) there is a valid, written arbitration agreement, and (b) a dispute is within the scope of the agreement.  Section 2 of the FAA provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2 (emphasis added).  Section 4 of the FAA further provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

9 U.S.C. § 4.

55.    Pursuant to the Agreement, Plaintiffs and Defendants agreed to arbitrate the allocation of liability in Texas.

56.    The Agreement did not contain the Liability Cap.

57.    Accordingly, Defendants are bound by the Agreement, specifically the arbitration clause, which calls for arbitration in Texas and does not include the Liability Cap or any other limitation on Defendants' potential liability.

10

58.     The Agreement constitutes a "contract evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2.  Under Section 2, "the word 'involving', like 'affecting,' signals an intent to exercise Congress' commerce power to the full." *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 893 F. Supp. 2d 1172 (D.N.M. 2012).  "The reach of the FAA thus extends to transactions in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." *Citizens Bank, Alafabco Inc.*, 539 U.S. 52, 56-57 (2003).

59.     The Agreement involves interstate commerce as it contemplates contributions from multi-state and multi-national insurance companies and includes multiple terms for the arbitration of commercial insurance policies.

60.     Along with agreeing to arbitrate the liability among the members of the Fueler Group, the parties also agreed in the Agreement  to arbitrate "(1) whether the Phillips Excess Policy provides coverage for Ascent for the subject claims, in which case the two policies share excess coverage for Ascent; (2) whether the National Union Policy is excess over the Phillips Excess Policy with respect to the Elite claims; and (3) whether Southwest is entitled to coverage under the Fuel Dealer Excess Program contained in Endorsement 7 to the National Union Policy." Exhibit A.

61.     Finally, the Agreement involves interstate commerce as the parties agree to arbitrate the allocation of liability in Texas, and the coverage issues in New York.

62.     Therefore, these activities, in the aggregate, affect and involve interstate commerce, thus subjecting the arbitration clause to the FAA.

63.     Plaintiffs have no plain, adequate, and immediate remedy at law for Defendants' refusal to arbitrate the allocation of liability in accordance with the terms of the Agreement, and Defendants'

11

resulting breach of the Agreement.   Accordingly, Plaintiffs are entitled to an order compelling Defendants to proceed to arbitration in accordance with their Agreement.

### COUNT VI - CAUSE OF ACTION IN PROMISSORY ESTOPPEL TO COMPEL ARBITRATION

### (Federal Arbitration Act, 9 U.S.C. § 4)

64.     Plaintiffs incorporate by reference the allegations set forth above, as if set forth fully herein.

65.     Plaintiffs assert a cause of action for promissory estoppel to compel arbitration.

66.     Plaintiffs were induced to contribute the majority of the funds required to complete the Settlements by Defendants' promise to arbitrate the ultimate allocation of liability between the policies for the money paid to complete the Settlements in accordance with the terms of the Agreement.

67.     Plaintiffs reasonably relied on, and reasonably acted on, Defendants' promise by providing the majority of the funds required to pay the Settlements.

68.     Defendants knew or had reason to know that Plaintiffs were contributing to fund the Settlements based on Defendants' promise of the opportunity to recoup at least a portion of these funds through binding arbitration pursuant to the Agreement. *See* Exhibit A.

69.     Defendants have refused to honor their agreement to arbitrate in accordance with the terms of the Agreement, and have instead refused to arbitrate unless Plaintiffs agree to the Liability Cap.

70.     Plaintiffs would not have entered into the Settlements, nor would Plaintiffs have funded the majority of the money needed to pay the Settlements, had they known that any future arbitration would be subject to the Liability Cap that the Defendants now seek to add to the Agreement.

71.     Therefore it is unjust for Plaintiffs to be denied the opportunity to recoup these funds through binding arbitration pursuant to the terms of the Agreement.

72.    Plaintiffs have no plain, adequate, and immediate remedy at law for Defendants' refusal to arbitrate the allocation of liability in accordance with the Agreement.  Accordingly, Plaintiffs are entitled to an order compelling Defendants to proceed to arbitration in accordance with the Agreement.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court enter judgment in favor of Plaintiffs and against Defendants as follows:

a.   A judgment against Defendants for Plaintiffs' damages as a result of the breach as previously alleged , plus pre-judgment and post-judgment interest, costs, and all other relief to which Plaintiffs are entitled at law or in equity;

b.   In the alternative, an order compelling Defendants to participate in  binding arbitration in accordance with the Agreement, with no limit on Defendants' potential liability.

c.   All other relief to which Plaintiffs are entitled at law or in equity.

Respectfully Submitted:


SOMMER, UDALL, HARDWICK &
JONES, P.A.


By: ___ */s/ Eric Sommer* _____
            Eric Sommer
            PO Box 1984
            Santa Fe, NM  87504-1984
            T: (505) 982-4676
            F: (505) 988-7029
            E: ems@sommerudall.com

13

5/4/2017                          RE: In Re Air Crash N51RX MEDIATION - Jad Stepp

Chris

Christopher Carlsen
Partner | Clyde & Co US LLP
Direct Dial: +1 212 710 3930 | Mobile: +1 347 387 0301

EXHIBIT
A

<image001.png>

The Chrysler Building | 405 Lexington Avenue | 16th Floor | New York | NY 10174 | USA
Main +1 212 710 3900 | Fax +1 212 710 3950 | www.clydeco.us

---

**From:** Houghton, Andrew T. [mailto:ahoughton@skarzynski.com]
**Sent:** Wednesday, December 9, 2015 10:57 AM
**To:** Carlsen, Christopher
**Subject:** FW: RE: In Re Air Crash N51RX MEDIATION

Chris,

I understand there has been a development with respect to the Martinez action wherein the plaintiff has made
a demand of ▮▮▮▮▮▮ which amount is beyond any reasonable valuation the defendants had contemplated
at the mediation in Santa Fe.

The terms we had discussed with regard to the settlements already reached were premised upon  the parties
being in agreement on the total amount of the settlements and the respective contributions towards those
settlements.  A unilateral settlement by ACE for an amount not agreed by the parties or to the extent of a
payment beyond what is agreed by the parties would present a materially different circumstance.  In that case,
we specifically reserve the right to present any and all arguments contesting the reasonableness, amount or
apportionment of any such settlement, including whether the settlement was a voluntary payment, as an
additional point to be resolved in arbitration.

The terms we have presented (below) for the parties' agreement now include the foregoing.

Andrew

## Andrew T. Houghton

Principal
Skarzynski Black LLC

**D** 212.820.7734 | **P** 212.820.7700 | **F**
212.820.7740
ahoughton@skarzynski.com

<image002.png>

One Battery Park Plaza, 32nd Floor
New York, NY 10004
skarzynski.com

---

The information contained in this message may be privileged and/or confidential and is intended only for the use of the individual recipient
identified above. If the reader of this message is not the intended recipient, you are hereby notified that any use, distribution or copying of this
communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, fax or e-mail
and delete this message. Thank you.

Disclaimer Required by IRS Rules of Practice: Any discussion of tax matters contained herein is not intended or written to be used, and cannot be used, for the purpose of avoiding any penalties that may be imposed under Federal tax laws.

**From:** Houghton, Andrew T.
**Sent:** Monday, December 7, 2015 5:19 PM
**To:** 'Carlsen, Christopher'
**Subject:** RE: In Re Air Crash N51RX MEDIATION

Chris,

As there has been no memorialization yet of the agreement between ACE and National Union framed in Santa Fe, I have put together the following terms:

- Settlement reached on the Summers, Chavez and Elite cases for a total of ▮▮▮▮▮▮;

- ACE to contribute ▮▮▮▮▮▮ or 82.858% on behalf of Southwest;

- National Union to contribute ▮▮▮▮▮▮ or 17.142% on behalf of Ascent and Phillips 66;

- ACE and National Union agree to arbitrate in Texas the allocation of liability among the defendants. The prevailing party will be awarded its costs incurred in the arbitration;

- ACE and National Union agree to arbitrate in New York the following coverage issues: (1) whether the Phillips Excess Policy provides coverage for Ascent for the subject claims, in which case the two policies share excess coverage for Ascent; (2) whether the National Union Policy is excess over the Phillips Excess Policy with respect to the Elite claims; and (3) whether Southwest is entitled to coverage under the Fuel Dealer Excess Program contained in Endorsement 7 to the National Union Policy. The prevailing party will be awarded its costs incurred in the arbitration;

- Non-waiver by all parties (Southwest, Ascent, Underwriters and National Union) on the same terms as in the Consent Agreement for the Green settlement;

- The foregoing terms, except for the settlement amount and respective contributions, apply to any future settlement of the Martinez case.

Please let me know if you concur.

Thanks,

Andrew

## Andrew T. Houghton
Principal
Skarzynski Black LLC

**D** 212.820.7734 | **P** 212.820.7700 | **F** 212.820.7740
ahoughton@skarzynski.com

<image003.png>

One Battery Park Plaza, 32nd Floor
New York, NY 10004
skarzynski.com

The information contained in this message may be privileged and/or confidential and is intended only for the use of the individual recipient identified above. If the reader of this message is not the intended recipient, you are hereby notified that any use, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, fax or e-mail and delete this message. Thank you.

Disclaimer Required by IRS Rules of Practice: Any discussion of tax matters contained herein is not intended or written to be used, and cannot be used, for the purpose of avoiding any penalties that may be imposed under Federal tax laws.

ALERT: Do international trade sanctions affect your business? http://sanctions.clydeco.com

This email message and any attachments may contain legally privileged and/or confidential information intended solely for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution or copying of this message or its attachments is strictly prohibited. If you have received this email message in error, please immediately notify us by telephone, fax or email and delete the message and all attachments thereto. Thank you. Clyde & Co US LLP is a Delaware limited liability law partnership affiliated with Clyde & Co LLP, a multinational partnership regulated by The Law Society of England and Wales.

Disclosure: To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that any tax advice contained in this communication (including any attachment that does not explicitly state otherwise) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing or recommending to another party any transaction or matter addressed herein.



**From:** Ross Cunningham <rcunningham@cunninghamswaim.com>
**Date:** May 5, 2017 at 5:15:57 PM CDT
**To:** Jad Stepp <JStepp@ss-pc.com>
**Subject: Re: Liability Arbitration Agreement**

Jad,

Thanks for the email below.  Unfortunately, it doesn't change anything.  Andrew's email does nothing but confirm that the parties agreed to arbitrate if either Garrett or David decided to arbitrate later.  What you keep refusing to acknowledge is that Garrett never agreed to a wide open arbitration.  Why would he?  The parties had agreed to an 80/20 split (with AIG having a hard dollar cap that might or might not have been triggered).  Why would Garrett ever agree to arbitrate above the 20% that David had already agreed to?

We stand willing and able to arbitrate pursuant to the form of the arbitration agreement I circulated two weeks ago.  We will not agree to a wide open arbitration.  If you guys are not willing to arbitrate with AIG having a maximum exposure cap of 20% then we simply have nothing further to discuss.

Thank you,

-Ross


Ross Cunningham
Cunningham Swaim, LLP
7557 Rambler Road, Suite 400
Dallas, TX 75231
469.729.7000 (Direct)
214.868.3438 (Mobile)
214.646.1495 (Main)